Jeffrey ALEXANDER Appellant,

v.

S & M MOTORS, INC., d/b/a the Lexus Store of Lexington, Appellee.

Ken–Ray Motors, Appellant,

v.

Wanda Childers and Don A. Pisacano, Appellees.

Nos. 1998–SC–0896–DG, 1998–SC–0951–DG.

Supreme Court of Kentucky.

June 15, 2000.

Rehearing Denied Oct. 26, 2000.

Don A. Pisacano, Stites & Harbison, Lexington, Counsel for Appellant, Jeffrey Alexander.

Paul "Skip" Gaines, Stewart C. Burch, Frankfort, Counsel for Appellee, S & M Motors.

Jimmy Dale Williams, Richmond, Counsel for Appellant, Ken–Ray Motors.

Don A. Pisacano, Stites & Harbison, Lexington, Counsel for Appellees, Wanda Childers and Don A. Pisacano.

JOHNSTONE, Justice.

The issue presented in each of these cases involves a question of first impression concerning the award of attorney fees under the Kentucky Consumer Protection Act (KCPA), KRS 367.220(3). We granted discretionary review to resolve a split of authority in the Kentucky Court of Appeals. We hold that the award of attorney fees under the statute is discretionary with the trial court.

We begin with a brief discussion of the pertinent facts of each case.

### ALEXANDER V. S & M MOTORS, INC.

On November 29, 1993, Jeffery Alexander purchased a vehicle from S & M Motors, which represented that. the vehicle had not been damaged, that it only had one prior owner, and that it was a "Certified Lexus Pre–Owned Car." Approximately one year later, Alexander discovered that the vehicle had sustained heavy damage prior to the date of purchase. Alexander subsequently filed suit against S & M alleging that he was defrauded. In the suit, he sought recovery of his purchase price and punitive damages. The matter proceeded to trial, and a unanimous jury awarded Alexander $6,000 in compensatory damages and $75,000 in punitive damages. However, the trial court denied Alexander's motion for attorney fees under the KCPA, and Alexander appealed this ruling. The Court of Appeals affirmed the trial court.

### KEN–RAY MOTORS V. CHILDERS

Wanda Childers purchased a used vehicle from Ken–Ray Motors in May, 1994. Childers began having problems with the vehicle within the first hour of purchase. She continued to have problems with the vehicle and ultimately filed a claim against Ken–Ray in November, 1994. In the complaint she alleged, *inter alia*, fraudulent misrepresentation and violation of the Kentucky Consumer Protection Act (KCPA), KRS 367.010 *et seq.* A jury trial was held concerning these two issues on January 27, 1997. The trial resulted in a unanimous jury verdict which awarded Childers $6,748.89 in compensatory damages and $25,000 in punitive damages. The award of damages was based on the jury's finding that Ken–Ray committed fraud upon Childers, violated the KCPA, and acted with fraud, malice or oppression.

Ken–Ray filed a number of post-judgment motions and Childers filed a motion for attorney fees pursuant to KRS 367.220(3). Childers subsequently filed further motions for additional attorney fees as would be generated from the post-judgment proceedings. The trial court denied all of Ken–Ray's post-judgment motions, and eventually entered an order awarding Childers: (1) the costs necessary

to prepare and bring her cause of action to trial; (2) $128.60 in post-judgment costs; (3) nothing for attorney fees generated in preparation for trial or incurred during trial; and (4) $600 in post-judgment attorney fees. The trial court further ordered that Childers not be awarded "any other (additional) costs or attorney fees, as movant has failed to persuade the Court that the additional fees and expenses claimed were necessary." Childers appealed from the portions of this order denying her any award of attorney fees incurred either in preparation for trial or during the course of the trial. The Court of Appeals reversed and remanded to the trial court for reconsideration of the issue of attorney fees and litigation costs.

### DISCUSSION

■ The issue presented in both *Alexander* and *Childers* is whether the trial court abused its discretion in denying attorney fees and costs under KRS 367.220(3), which provides:

In any action brought by a person under this section, the court *may award*, to the prevailing party, in addition to the relief provided in this section, reasonable attorney's fees and costs.

(Emphasis added).

■ Not only have Kentucky courts long construed "may" to be a permissive word, rather than a mandatory word, but our legislature has given guidance in this regard. When considering the construction of statutes, KRS 446.010(20) provides that "may" is permissive, and "shall" is mandatory.

Chief Justice Lambert recently noted in *White v. Check Holders, Inc.*, Ky., 996 S.W.2d 496, 497 (1999):

This Court's duty in construing statutes is to ascertain and give effect to the intent of the General Assembly. *Beckham v. Board of Education*, Ky., 873 S.W.2d 575, 577 (1994). When the words of a statute "are clear and unambiguous and express the legislative in-

tent, there is no room for construction or interpretation and the statute must be given its effect as written." *McCracken County Fiscal Court v. Graves*, Ky., 885 S.W.2d 307, 309 (1994).

We, therefore, read the statute to authorize, but not mandate, an award of attorney fees and costs in an action brought under the Kentucky Consumer Protection Act. Of course, whether to award such is a decision subject to the sound discretion of the trial judge.

■ When a trial court is considering whether to award attorney fees and costs and/or how much to award, the trial court's decision should be guided by the purpose and the intent of providing an award of attorney fees and costs under the act. As Judge Knox, writing for the appellate panel in *Childers*, ably explained:

Permitting an additional recovery of attorney fees and litigation costs is intended to compensate the prevailing party for the expense of bringing an action under the statute. A further aim is to provide attorneys with incentive for representing litigants who assert claims which serve an ultimate public purpose (*i.e.*, a deterrent to conduct resulting in unfair trade practices which perpetrate fraud and deception upon the public).

In many, if not most, consumer protection cases, the monetary value [of the underlying claim] is typically low. Should the court focus strictly on the dollar value of the ultimate award when considering attorney fees and costs, the intended remedial goal of the statute would be thwarted, if not entirely defeated. Simply put, if, in these cases, attorney fees and costs do not provide a reasonable return, it will be economically impossible for attorneys to represent likely litigants. Thus, practically speaking, the door to the courthouse will be closed to all potential parties excepting those with either a strong probability of substantial damages, or those with sufficient economic resources to personally afford financing the expense of litigation.

Such a situation would indeed be ironic, since it is precisely those with ordinary consumer complaints, who cannot afford to pay attorney fees, for whom these remedial acts are designed.

*Childers v. Ken–Ray Motors*, Ky.App., 1998 WL 381342, 97–CA–1496–MR, July 10, 1998.

■ Thus, a trial court's polar star when considering a motion for attorney fees under the KCPA is keeping the courthouse door open for those aggrieved by violations of the act. In both cases at bar, neither trial courts' ruling concerning attorney fees penalized either plaintiff for bringing a claim under the act. Nor does either ruling establish a precedent which closes the courthouse for future plaintiffs or makes the door more difficult to open.

The jury awarded Childers $6,748.89 in compensatory damages and $25,000 in punitive damages. The compensatory damages represented the maximum amount that could be awarded under the instructions. Childers' attorney submitted an affidavit in support of Childers' motion for attorney fees. According to the affidavit, the amount of attorney fees due as a result of the representation of Childers was $24,965.23 based on a rate of $120 an hour, which, consequently, was just a few dollars less than the punitive damage award. The punitive damage award prevented Childers' favorable judgment from being turned into a Pyrrhic victory. That is, even after factoring in attorney fees and litigation costs, Childers was not made less than whole by the jury's verdict. Further, the denial of an award for attorney fees in this case did not prevent Childers' attorney from making a reasonable return on his efforts. Finally, we do not believe that the denial of attorney fees in Childers' case will deter others aggrieved by violations of the KCPA from bringing suit in the future or attorneys from representing them.

The jury awarded Alexander $6,000 in compensatory damages and $75,000 in punitive damages. Alexander's counsel sought $26,594.50 in attorney fees, which the trial court found to be reasonable. The argument that the trial court abused its discretion in denying attorney fees and costs to Alexander is less compelling under the relevant facts of his case than under the relevant facts of Childers' case.

For the reasons set forth above, we hereby affirm the Court of Appeals in *Alexander v. S & M Motors, Inc.* (1998–SC–0896–DG) and reverse the Court of Appeals in *Ken–Ray Motors v. Childers* (1998–SC–0951–DG).

LAMBERT, C.J.; COOPER and WINTERSHEIMER, JJ., concur.

STUMBO, J., concurs in part and dissents in part by separate opinion, in which GRAVES and KELLER, JJ., join.

STUMBO, Justice, Concurring in Part and Dissenting in Part.

Although I agree with the legal reasoning of the majority opinion, I disagree with the result it reaches and therefore must dissent in part. I agree with that much of the majority's analysis which interprets the Kentucky Consumer Protection Act, KRS 367.220(3) as authorizing, but not requiring, the award of attorney fees to the prevailing party in a suit brought pursuant to the Act. However, I believe the trial courts in both cases herein failed to thoroughly consider all relevant factors when considering the plaintiffs' requests for attorney fees, and, consequently, their denial of attorney fees was an abuse of discretion. I believe Judge Knox's opinion for the Court of Appeals in the *Childers* case articulately and thoroughly sets forth the factors a trial court should consider when considering a request for attorney fees under the KCPA:

> [T]he intent of [KRS 367.220(3)] is analogous to KRS 344.450 which provides for the allowance of attorney fees and costs arising from a successful prosecution for a violation of the Kentucky Civil Rights Act, KRS 344.010 *et seq.* In this regard, *Meyers v. Chapman Printing*

*Co., Inc.,* Ky., 840 S.W.2d 814 (1992) remains the seminal case regarding the calculation of reasonable attorney fees as permitted by KRS 344.450.

. . . .

[In *Meyers,* the Kentucky Supreme Court stated] that "the court should not undertake to adopt some arbitrary proportionate relationship between the amount of attorney fees awarded and the amount of damages awarded." *Meyers,* 840 S.W.2d at 825–26. We believe identical reasoning is applicable under the KCPA.

With respect to civil rights grievances, the accepted method of calculating attorney fees is that set forth in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), as adopted by the *Meyers* Court. The *Hensley/Meyers* analysis provides that attorney fees should be ascertained by multiplying counsel's reasonable hours by a reasonable hourly rate to produce a "lodestar" figure. This lodestar figure may then be adjusted to account for any special factors particular to the individual litigation. *Meyers,* 840 S.W.2d at 826.

Special factors the court will want to consider in making any adjustment to the lodestar figure include: (1) amount and character of services rendered; (2) labor, time and trouble involved; (3) nature and importance of the litigation in which the services were rendered; (4) responsibility imposed; (5) the amount of money or value of the property affected by the controversy, or involved in the employment; (6) skill and professional character and standing of the attorneys; and, (8) the results secured. *Boden v. Boden,* Ky., 268 S.W.2d 632, 633 (1954) (citing *Axton v. Vance,* 207 Ky. 580, 269 S.W. 534 (1925)). These factors have long been regarded as applicable through the decisional law of Kentucky. *Commonwealth v. Lavit,* Ky., 882 S.W.2d 678, 680 (1994) (calculation of fees for private attorney who acted as public defender); *Daniels v. May,* Ky.,

467 S.W.2d 372, 374 (1971) (attorney fees allowed for services rendered in civil litigation extending over four years); *Itschner v. Itschner,* Ky., 455 S.W.2d 54, 56 (1970) (award of attorney fees in dissolution action); *Stubblefield v. Stubblefield,* Ky., 327 S.W.2d 24, 26 (1959) (same); *Brown v. Fulton, Hubbard & Hubbard,* Ky.App., 817 S.W.2d 899, 901 (1991) (attorney fee charged for defending client against criminal charges); *Citizens Fidelity Bank & Trust Co. v. Harvin,* Ky.App., 550 S.W.2d 569, 570 (1977) (award of attorney fee for sale of real estate that was subject of action for specific performance).

In my opinion, considering all the proper factors set forth by Judge Knox, and given the services rendered by both plaintiff attorneys and the results realized from said services, the trial courts below should reconsider their refusal to award attorney fees. The trial courts' failure to allow any fee for time spent actually litigating the case and all hourly services leading up thereto is inconsistent with the finding (implicit in *Alexander,* explicit in *Childers* ) that the jury's award of both compensatory and punitive damages was supported by the evidence and not the result of passion or prejudice, and that the amount of the compensatory and punitive damages were not excessive. Thus, in my view, the trial courts below either abused their discretion or failed to use it at all. I therefore would remand both cases to the trial courts for reconsideration of the plaintiffs' request for attorney fees in view of all the relevant factors set forth above.

GRAVES and KELLER, JJ., join.